May it please the court. My name is Rachel Steinholt, and I represent Mr. Truax. We are asking this court to vacate Mr. Truax's conviction based on two independent and compounding trial errors. And in the alternative, we request a remand for resentencing as the sentence was substantively unreasonable. Turning to the first trial error, on the final day of trial, the government cross-examined Mr. Truax based on information it discovered through a recorded jail call that was never turned over to the defense. There are four points to make on this issue. First, this call was discoverable as a recorded statement under Rule 16A1BI. Second. I have a question up front here. This is Judge Kobus on the line. As I understand it, the basis of this claim is essentially Rule 16, and that refers to a recorded statement of a defendant. So is it the telephone call really that's the heart of your claim here, or is it the book that was referenced in the call? And does that distinction make a difference at all? I understand your client didn't know about the phone call, and counsel didn't know about the phone call, but your client knew about the book. So can you help me work through if that matters or not? Sure. There's two questions in there. I'll take the first question you asked first. So both the book and the call are contained in this discovery rule. So the call contained Mr. Truax's request for a book. That's from case law or your reading of the rule? Our reading of the rule, plus the facts of this case. So Mr. Truax's request in which that's the recorded statement, it's this request for this book. That book instructs him on how to testify at trial. So this indicated to the government that Mr. Truax intended to testify at trial. It was his request, which makes the statement relevant. It makes the book relevant. It's relevant to his credibility. It goes to his knowledge of this book. It goes to the purpose of the book. So we've got the discoverability question here, and of course, there's no actual defendant's actually offered at any point here, right? It's just have you read the book, okay? And so, you know, the question is, is that they should have, or the argument is that the statement should have been discoverable and should have been produced because it would have led to possibly admissible evidence, right? A clarification. It did lead to, they only get, it is the thread that leads to the book. This is the only way per the court, or the government's admission, this is the only way that we get to the book. Right. Yes. But we're talking about evidence here, and we're talking about what gets in front of the jury, right? And so as far as the evidence that's actually in front of the jury, there's the statement, the defendant's statement itself is never offered. So that's, the only problem that exists there is, was it discoverable under Rule 16, right? Correct. Okay. Now, your client, of course, knew that he had the book, knew that the conversation took place, he just failed to disclose that to his counsel. Now, these sorts of things happen with some regularity in trials, and I'm kind of wondering is why was it never the request for a continuance, an in-trial continuance, you know, and it is impeachment, right? So at the end of the day, if you've read a book and it advises you to testify in a certain way, that is, you're not arguing that that wasn't proper impeachment, are you? The government is within its right to impeach a client and challenge its credibility. Correct. But there's a couple things to unpack there, and one of the things is tied back to Judge Kobus' question about this book. He had this book in his possession, he knew about the book. I think that's a misunderstanding of Rule 16A. Rule 16A requires that the government inform the defendant of the evidence that it has against him, and that includes the defendant's recorded statements under 16A1Bi. And those statements, again, are the thread that leads us to this book. And to your second point about whether the remedy question. So if we have this discovery violation, which we do, what's the remedy? And under Rule 16D2, there are remedies listed, continuance being one of them, and that is the most popular remedy, but that wouldn't have been an appropriate remedy here. And there's three reasons why. Well, I'm going to jump ahead, because on this point, your remedy arguments, the creative, you don't have any authority for them. But leaving that aside, when we get to prejudice, the prejudice argued is no time for counsel to prepare. But that's the opportunity to review before cross-examine actually is not the prejudice claim. The prejudice claimed is, oh, he wouldn't have taken the stand. Now, give me a case where that has been found to be qualifying, so to speak, prejudice. Sure. I don't have a case that I can cite to on that. That's a pretty dramatic statement. And from that, you want a new trial. Are you going to promise that he won't testify at a new trial? Heck no. Well, to answer your question about prejudice, there's three prejudices that we see here. You have the opportunity to cross-examine. That's a nothing. Because as Judge Erickson points out, it wasn't a problem until he lied about what he knew. So what was the opportunity to prepare about that? Well, counsel would have dealt with his client differently before trial, I suppose. Well, respectfully, I think that mischaracterizes the facts in terms of it wasn't relevant when he had this breakdown on the stand. It was relevant the moment that he requests the book, because it reflects that he intends to use this book. Well, it was relevant to the government when he did the dramatics undirect. Sure. But because they skirted around the discovery rule that Yeah. Well, what's the third one? So the first one, you know, we have this sword shield that's being used. So they should have disclosed this. They use it as a sword. We don't have the opportunity. No, that's back to arguing the merits. I'm talking about prejudice now. Counsel opportunity to prepare doesn't fit this trial. So what's your other claims of prejudice? Okay. The second way would be back to the point about that. It did thwart his ability to make an informed decision about his constitutional right to testify. But you said there were three. I want to finish on that one, because that one, I think, is very interesting. Yep. So the third really goes to the fact that this error is magnified at closings. So it's more about the not harmless error aspect of this error is that it's further just magnified. You mean it's another part of your alternative or your closing argument? Well, they're independent. Not really. Not if you're claiming the same thing that prosecutor misconduct was also prejudice for the discovery mistake or whatever it was. The reason that they're independent is because... They're legally. You can derive... Correct. You can cite different authorities. But that's not independent prejudice. So if you lose on the prosecutor misconduct argument, you're going to lose prejudice. Prejudice. I disagree, because on the impeachment argument, it's about... No, you didn't. I want to come back. I'm trying to get you back to what you said there isn't any authority for. We do have authority on the impeachment. No. On the notion that a failure to disclose something the defendant already knew was prejudicial, because if he knew the government had it, he might have chosen to exercise his testify. That's your argument, right? It's one of them, yes. The one I want to talk about? Yes, correct. Well, come on. You said you don't have a case. I've never heard of a case. I've never heard of the argument. So flesh it out for me. Why can the government having... The government may have a but whose testimony will refute or otherwise discredit what the defendant was planning to testify in defense. And so that, the argument, oh my goodness, his constitutional right to make the decision to testify. That's prejudice? I've read a lot of cases in this area. I wasn't a criminal trial lawyer, but that just strikes me as preposterous. I understand your position. I'm sure you've researched it, that I haven't. You know, this is a unique set of facts. I don't know if there's another case. I certainly haven't found one where this sort of fact scenario happens where a defendant breaks down. I suspect it's not unusual for defendants in postmortem to say, why did you let me testify? Because it just hurt my case. But, I mean, it's a creative argument, but I just don't see how it can be legitimate prejudice in this context. And the remedy, you're saying the only viable remedy was to exclude the book. Yes. To exclude everything, not just the book. To exclude that that recorded jail call statement occurred, the records related to that, all of it. And the reason being is, you know, there's three points to the remedy part, why this was the only viable remedy. We already discussed that he had already began testifying, so we'll set that one aside. The second one is that just a continuance was logistically unfeasible, as this was a trial held during COVID with only one juror alternate. So any delay risks just incurring a logistical nightmare. And finally, any delay could have been lengthy. This was a 304-page book to read, the possibility of obtaining additional witnesses, possible experts. Is this back to the counsel for preparation prejudice? Because by the time, as I understand the impeachment questioning that was focused on specific parts of the book, and the defendant said, I'm not familiar with those. And then the rebuttal witness said, yeah, those are really parts of the book. So it wasn't 304 pages that counsel had to redirect on. Well, to clarify that, we didn't know what to, we didn't know what specific the government was going to, you know, there could have been other excerpts in the book that were helpful to defense. We don't know. We didn't get a chance to. No, that's his fault. He didn't tell you about it. Well, I think, again, that that's a misunderstanding of Rule 16a. That the government is required to turn over. I'm talking about prejudice, purely. Okay. I think prejudice, I think your claim on the merits is stronger than your claim of prejudice. Okay. I do see that I am running out of time. So I will reserve the remainder of my time for rebuttal. Mr. Kelderman. May it please the Court. Your Honors, the United States submits that the, any violation, if there were a violation of Rule 16 here, that violation, and the United States is not conceding that, but if there were a violation, that evidence was excluded. There were no jail calls that were admitted. The defense, the appellant has not shown that these were in the United States' possession. They were jail calls. Jail calls, and the United States, the prosecutor, did not even know that any of the officers that were involved or had anything to do with this case had been listening to the phone calls. You know, that's, you know, and that argument, just the rule itself has some attraction to it. You know, basically, no statement of the defendant was ever admitted, ever received. But the question is really different than that. And that is, is that but for the statement of the defendant, they never would have discovered the existence of the book. And I think Judge Loken is really kind of on to where is the prejudice in this case. It actually ties directly to the argument at closing. Because at the argument at closing, the statements were made that, you know, first of all, there was an opinion offered as to the truthfulness of Mr. Truax. And that skirts very close to the edge of things we've said are just like, that's improper. And then you look at, you follow it up with some references to the testimony, which is more proper. And so it becomes a very close question. But at some point in the argument, the argument is advanced that, you know, on the stand, having been coached by Jerry Spence, Truax knew exactly how to testify and how to cry, how to show your heart. And so while that's tied to the book, it's also really related back to the opinion as to the truthfulness of Mr. Truax generally, right?  And I think that's what they're trying to advance is that the prejudice here really is, we didn't know about the book. We couldn't prepare for the book. You used the book in a way, not simply to impeach my client, but to bolster your opinion as to the honesty and the veracity of Mr. Truax's testimony. And that, my friend, they argue is prejudice. Why are they wrong? I'll go right to the, I guess, prejudice about the term theatrics. The prosecutor is allowed to make fair comment on the evidence. And the jury saw a man who was on the stand who testifies. Sorry, that's non-response. Yeah, sure, you can make an argument. But can you make the argument with evidence that's a result of a discovery violation? Your Honor, once again, I submit that there was no discovery violation. We didn't try to use any of the statements that he made. This was something where none of this information about the jail call. Back to Judge Erickson's question, please, with a responsive answer. I apologize. I believed, I thought that I was. The prejudice here, I don't believe that there is prejudice because I believe that it was a publicly available book. It is something that the defendant knew about. That his counsel didn't is a whole other matter. But that's between him and his attorney. The United States found out about it, but none of the rest of this information. His phone call with his aunt, talking about ordering books, asking her to order books. Defendants do that all the time. And we don't look at them and say, oh, we got to look into that book. Just because someone orders a Jerry Spence book or any other of a number of books that are popular in jails does not indicate that a defendant is automatically going to take the stand. And nor would an officer know those things. It was when he was on the stand. But the cross-exam was the result of the alleged discovery violation. It wouldn't have happened otherwise. The cross-exam probably would have been excluded as irrelevant and not probative. If, but for this. This was not in the United States' possession. So I submit there's no discovery violation. I thought it was at least two days before trial. It was the. I mean, the violation as the key violation argument is the last two and a half days, as I understand the defendant's brief. It was the second day of trial. It was that evening. It was, I believe, the end of the second day. The defendant was on the stand and he started doing his different things where he was acting upset and failing or acting like he could not answer questions. And so after the testimony, the officer said, the officer who had testified earlier, he said, well, I wonder if that has something to do with the book. And I don't recall the exact conversation. It's not in the record. But he pointed it out to the prosecutor. The prosecutor, we just happened to have a copy of the book in our office. Another prosecutor had it. So they looked it up and they found things where it was relevant after he took the stand. But nothing about any of the things leading up to it told the prosecutor, told the government that it ought to go get these jail calls or turn them over as discovery. There was nothing in there. They would have been irrelevant until the time the defendant testified. And that's when the book became highly relevant. And that's when the prosecutor began the questions about it. And the issue, of course, as we look at this is, should the disclosure have been made earlier, you're arguing that it didn't need to be because it was irrelevant. The statement itself was never coming in. So the phone calls themselves did not have value. And they weren't discovered until the defendant had actually testified. And then it's all about impeachment. And there are things that come up whenever anybody testifies at impeachment that the relevance is unknowable until that happens. And therefore, disclosures should be excused, right, in this circumstance. That is. Right. That's your argument. That is my argument better stated than I can make it. Now, if that doesn't happen, if we say, you know, probably knowledge of the existence of the Spence book, knowing he was about to take the stand, that at that point probably had some relevance, should have been produced. The real issue that I keep seeing here, and I hate to do this because you leap to this point, if it's not properly admitted, then the real issue is what kind of prejudice develops out of it. And it really is this twofold thing. It's the first statement, which is that there's theatrics and he's not telling the truth. But then there's this very forceful doubling down on the statements within the Spence book, right? I mean, this wasn't played lightly in the government's closing argument. It was hammered home in a way that if there's a problem, there seems to be far more likelihood of prejudice here than you'd see in the ordinary case because, you know, you didn't just simply say there were a bunch of theatrics. That's consistent with the Jerry Spence book, right? And, you know, you heard the evidence. You saw the witness. You draw your own conclusions, right? Which you might have made that argument. But instead, you made the argument where you talk about, you know, exactly show them their pounding heart. You know, I mean, that's not it. But he says, I think it was Truax knew how to play on your emotions that he was told to show them your heart. It's a pounding heart. You saw the Spence book, you know, and that may be a different thing. So why is there no prejudice there? Assume for just a minute that you should have disclosed it. Your Honor, I submit that there is no prejudice there because, first of all, and I'll get to the exact details, but there wasn't an objection. The prosecutor made that closing argument during her beginning closing. It didn't just come up in rebuttal. And that's where problems so often come up, and that's where occasionally a reversible error will occur. Here, it was twice during her opening closing. And she brought it up, and it was completely tied to the phrases out of the book that Commander Gromer had talked about were in the book. He confirmed that they were in there. She directed her argument exactly at what he did on the stand and what was in the book. And it showed that it was essentially an acting job. She did, I believe, call it an acting job. Page 257 of the transcript. He's acting in general. That's where she follows it up. Acting and theatrics. Theatrics is another way of saying that he's acting. He's putting on a show. And she tied it, the specific things that he had done, to the specific quotes in the transcript. That's why it wasn't an improper closing argument. That's why there's no prejudice resulting from any alleged discovery violation. Again, I go back to just briefly, this was not, this book is really what the evidence was that came in at trial. At least testimony about the book and the defendant's receipt of it and different things. He confirmed that he read it cover to cover. And then he said, I don't remember that line. I don't remember this line. And so they were read into the evidence. That's a publicly available book. It's available to anyone. I have a quote in my brief and I cannot find the site on it right now. But it goes to when things are publicly available. They're as available to the defendant as they are to anyone else. I argue that it was even more available to him. He had it in his possession. He got it from his aunt. That's all true enough. But what's troubling is if the government had disclosed it knew about the book before he took the stand, defense counsel would have prepared him much differently. Arguably so, Your Honor. I think it's more than arguably. Okay. I mean, well, there are some clients who won't take advice. But I think we can put that aside. Okay. And I don't disagree that there would be different preparation. Why shouldn't we have another trial to see how it plays out with all cards on the table? Because again, Your Honor, it wasn't discovery. It wasn't something that was even relevant or considered. It wasn't in the possession. Was it known to the government before he testified? No. No. It was he already started testifying and that's what caused them, caused an officer. But it should have been known to the government. If you're saying the government's witness who didn't happen to be a federal employee knew all about it. Your Honor, the Pennington County Jail records every phone call, texts, emails that go out from the place. So then the government should have known. If it did his homework. There are sometimes in cases hundreds of hours of calls. And I guess my point is that we don't always get those calls. We don't ask for them because we don't have any reason to believe that they are necessary. Did the government know he would testify in his defense? I don't know if it's in the record, but I believe it was just when he took the stand. I don't believe he was on the witness list. I think he just took the stand. If he was, I would stand corrected on that, of course. All right. So what happens, as I understand it, is that the defendant takes the stand. He testifies. That evening, one of the government's other witnesses, was it the managing agent? No, it was not. It was not the managing case agent. So another law enforcement officer said, hey, he got the Jerry Spence book. And that's how it all comes to be. And that same evening, you disclosed that to the defense. I believe it was in the evening when they were talking. It was Officer Almeida. I don't believe he was an agent or detective at the time, but I could be wrong. He testified earlier. He was the arresting person. He's the one that put the lights on when they actually arrested Truax. Somehow, there was a conversation that evening about his behavior on the stand. And he said something about it having to do with this book that he ordered. And my understanding is that the prosecutor said, what book? Well, I've been listening to calls. And that's how they then went back and listened or at least accessed them. Just so happened that another prosecutor in our office had a copy of the book. And so they looked at it, I believe, right away the next morning. I believe it was the next morning when it was disclosed to defense counsel that they had it. It's still not a lot different than like a lot of the... I mean, I don't want to characterize them, but you know, the ordinary street crime cases that we usually see coming out of Indian country where, you know, you'll have a BIA agent who says, I think we've got a photograph of that someplace, boss,  and those things happen. And they make a prosecutor cringe when they happen. This one, not necessarily, though. I don't believe that there was any cringe here. This was just something where his testimony made it relevant. And that's because your position is, remains, and always will be that it wasn't discoverable anyhow. That's correct. Right. Thank you, Your Honors. For rebuttal. Okay. What's your best case for it, that it was discoverable? I would point to... Nelson is a recent case. Say it again. Nelson was actually one that you were on that panel. But I think the rule itself is our best guidance here. 16A1B1 directs us that if the... that the jail call was relevant, it's a recorded statement that falls under 16A1B1. I, excuse me. It was within the government's possession, custody, and control. And the attorney for the government, through due diligence, could have known that the statement existed. So again, our point is that relevance occurs immediately with the recorded jail call. It does not occur with Mr. Truax's testimony. And that is because it reflects that he intends to testify at trial. It doesn't matter when he actually exercises that right. The government is aware of that intent on October 2nd when that jail call is made. Trial starts November 1st. So Section 2 of that rule tells us that it's when the government could have known that the statement existed. And per the government's own admission, it was, quote, really busy doing other stuff, close quote. That is not sufficient to sit on a discovery violation. So, no, it's... Your argument is should have discovered. So that is a relevant retort to that argument. I'm not sure I understand the question. I'm not sure I understand your answer. Under Rule 16, I'm looking at... They say they didn't have it. They did have it. Pardon? They did have the jail calls. The jail is not a federal facility, right? They were recording. They were tracking the jail calls. The prosecutor indicated... Who? The jail? In the record, it's ICAC. I-C-A-C, I'm not sure how to pronounce that acronym. But the prosecutor acknowledges that she wasn't aware that ICAC had been recording or following these recordings. So, what I understand is essentially this, is that every single phone call and every single text message that's coming out of the jail in Rapid City is being recorded. And it sits in a big mass of other collected stuff at some place. And clearly, the government, through due diligence, could have known that there were phone calls. Is it your contention that every single phone call and text message that the defendant has made, those are recorded statements of the defendant, that they are subject to ordinary discovery? No. It's only relevant, if it's relevant. And what they're arguing is, is that the relevance was unknowable and unforeseeable until he actually took the stand. And we disagree with that point. Okay, why? Because this book instructs somebody how to testify. So, even if he didn't have... Instructs people how to testify. He requests a book that instructs him how to testify. It's relevant. It indicates that he plans to testify. It indicates that he is going to use this book to help him with that. So, even if he gently cried on the stand and didn't have a total breakdown, it doesn't tie to the breakdown. It ties to the fact that it reflects he intended to testify. And Jerry Spence wrote... He'd ordered a book on the Clarence Darrow's defense. So, that would have been... Well, that's about testifying. So, that's discoverable? Or has to require mandatory disclosable? Possibly. Possibly, if it looks like a good argument after the fact. You know, the Jerry Spence book specifically is written by a criminal defense attorney on how to prepare for a defense case. And it's written for lawyers, right? I mean, Jerry Spence did not write this book to give to defendants. What he's really doing is he's saying it's important that your client testify from the heart. That, you know, that your client lets the jury know what they're feeling, what they're experiencing, that they are not afraid to show their emotions. And of course, I mean, I did a little defense work, but I did enough to know that that's just sound advice generally. I mean, as a practical matter, anything that makes your client more human in a criminal context is important because the reality of it is when the defendant takes the stand, way too many jurors just see bad guy. And so, you have to find a way to make bad guy into kid next door, right? And one of the ways you do that is by allowing that witness to demonstrate their humanity, right? And this thing is a complete nothing burger if it's in the hands of a lawyer, but it becomes powerful if the defendant has it because just what happened here. Every time the defendant's in possession of this book, you're going to be able to claim that it's all theatrics, right? Sure. Okay. And so, the issue you've got though is really is that if... See, I thought you were going to tell me that I want every one of those phone calls and every text message because the relevance is unknowable until the trial. But if you're saying it's got to be knowable at that point, well, are you saying that reasonable diligence would require the prosecutor to go through thousands of hundreds of hours of recorded phone messages just to make sure that there's no question about Jerry Spence's book? I would answer that by tying what happened here. They were tracking these phones. They already did that. That is how this case agent knows that this exists. And so, there was no extra requirement here to... They already did it. That's why they were able to use it as a sword. Oh, I remember that. I remember that. Listening to that jail call. Let's go get that book. It's super relevant to get that book. Got to get that book. And then, they don't, you know, disclose that information to us until the following morning. Mr. Truax testifies at 9. We find out about it shortly before 9. That's all we had to prepare. The case goes to the jury at 1130. It's... It wasn't fair. We were prejudiced... You should have moved for a continuum. Can I respond to that? I see my time's up, so I don't want to... And then we're... Sure. And to that point, I think this is distinguishable from the Nelson case. From other cases, this happened at a very unique part of trial. I, you know, I know you don't appreciate that argument. It doesn't land with you about that this was... It impacted his, you know, decision to testify. It also... If you'd learned... Well, no, he was already on the stand. He was already on the stand. Yeah, so you... You already cried. He had already cried. You can't undo, you know, he can't take back at that point that's introduced. The government didn't know. It just should have known. They did know. Not until the night before, I thought. No. Nope, we just clarified that with Judge Erickson. So, the agent knows. And by... The prosecutor should have known. Sorry, I don't want to talk over you. I didn't hear your question. We've had... You know, this goes around and around, and it doesn't get anywhere. How should the... Because your argument shifts with every question, frankly. The prosecutor should have known about this. Just because she didn't, the standard under the rule is that she could have known. Now, her agent knew about it. What rule? 16A... All right, well, give me the case for the should have known. It's on the plain language of the statute. All right. Thank you. We'll take the case under advisement. Certainly been...